IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JASON T. SLAMA,<br><br>                  Plaintiff,<br><br>vs.<br><br>SGT. KEVIN KRECKLOW, in his individual and official capacities; SGT. WES LUDLOW, in his individual and official capacities; and COUNTY OF CASS, a Nebraska political subdivision,<br><br>                  Defendants. | Case No. 4:23-cv-3070<br><br>**COMPLAINT, JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL** |

## INTRODUCTION

Wearing a cap displaying the letters "F.B.I.", Jason T. Slama attended a Luke Bryan concert performed to thousands of people from a stage located in a privately-owned alfalfa field in rural Cass County, Nebraska. The gates to the concert area were located in the middle of the field, many feet from any road, highway or parking area. When SLAMA, still wearing his cap, asked for Defendants' legal authority to block him from passing through the gates with his partially-consumed can of beer, Defendant KRECKLOW punitively employed an MMA-type technique to severely fracture SLAMA's leg. To further punish SLAMA, Defendant LUDLOW gripped, twisted, and applied force to SLAMA's broken leg, and then subjected him to a painful wrist lock while forcing him into a police cruiser with his leg broken in two.

### PARTIES, JURISDICTION AND VENUE

1.

Jason T. Slama is a resident of Hickman, Lancaster County, Nebraska.

2.

Sergeant Kevin KRECKLOW is a law enforcement officer of Sarpy County Sheriff's Department. He is sued in his individual and official capacities. At the time of the events in question, KRECKLOW was wearing his official uniform, displaying a badge, and carrying a firearm. KRECKLOW was acting on behalf of the Sarpy County Sheriff pursuant to a "Cass County, Sarpy County Law Enforcement Mutual Aid and Assistance Interlocal Agreement."

3.

Sergeant Wes LUDLOW is a law enforcement officer and a supervisor employed by the Cass County Sheriff. Like Sergeant KRECKLOW, LUDLOW was in uniform, displaying a badge and armed. LUDLOW is also sued in his individual and official capacity.

4.

The County of Cass is a Nebraska political subdivision.

5.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 42 U.S.C. §§ 1983 and 1988. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in rural Cass County, Nebraska.

FACTUAL BACKGROUND

I.

THE INTERLOCAL AGREEMENT

6.

On or before September 20, 2022, Cass County entered into a "Cass County, Sarpy County Law Enforcement Mutual Aid and Assistance Interlocal Agreement" (hereinafter, "the Interlocal

Agreement") with Sarpy County, a Nebraska political subdivision. Pursuant to the Interlocal Agreement:

> the Cass County Sheriff requests the Sarpy County Sheriff to provide or assign up to twenty (20) deputies from Sarpy County to work the concert event. Sarpy County deputies working pursuant to this Agreement shall be certified law enforcement officers and shall work in cooperation with the Cass County Sheriff's Office …

7.

The "concert event" in question was a Luke Bryan concert, held on private property owned by the Andrew Stock family in rural Cass County, Nebraska.

8.

The Interlocal Agreement further provided that Cass County "shall reimburse Sarpy County for the wages paid by Sarpy County to the deputies approved to work at the concert at a rate equaling each individual deputy's overtime rate including all associated benefits, taxes and benefit costs."

9.

Pursuant to the Interlocal Agreement, Sarpy County provided and/or assigned Sergeant Kevin KRECKLOW to work at the concert with Cass County Sheriff's Office personnel. KRECKLOW wore his law enforcement uniform and badge and was equipped with a Sarpy County Sheriff's Office-issued Taser.

## II.

### THE LUKE BRYAN CONCERT

10.

SLAMA was one of many area country music fans who attended the Luke Bryan concert. It was a festive atmosphere. Many concertgoers, SLAMA included, wore clothing with humorous

language, funny hats, or other expressive adornments.

11.

After the concert concluded, SLAMA walked toward temporary gates allowing entry and exit that were placed to mark the area of the alfalfa field designated for the concert venue. He was carrying a can of beer in his hand, and was wearing his "F.B.I." cap.

12.

A Cass County deputy sheriff, Danielle McAndrew, initiated contact with SLAMA and informed him that he would not be allowed to carry his partially consumed can of beer through the exit. She asked SLAMA to either finish his beer or discard it.

13.

In response, SLAMA asked Deputy McAndrew to identify the Nebraska statute that prohibited him from finishing the beer on the area of private property outside the temporary gates. Apparently unable or unwilling to do so, Deputy McAndrew included Deputy Wes Tuttle in the conversation.

14.

SLAMA continued to ask both Deputy McAndrew and Deputy Tuttle to identify the Nebraska statute that required him to leave his beer before exiting the gate.

15.

Though neither deputy could identify a statute, SLAMA eventually discarded his beer.

16.

At that point, KRECKLOW and Deputy Ryan Lee approached SLAMA.

AGENCY POLICY: BODY-WORN CAMERAS

17.

Cass County Sheriff's Office Standard Operating Procedure A-22, "Body-Worn Camera," provides that

> It is the policy of this agency that deputies shall activate the body-worn camera when such use is appropriate to the proper performance of his or her official duties, where the recordings are consistent with this policy and the law.
>
> Body-worn cameras are for the accurate documentation of law enforcement contacts, arrests, and critical incidents. They also serve to enhance the accuracy of deputy's reports and testimony in court.

18.

Cass County deputies are required by this policy that they "shall activate the body-worn camera when its use is appropriate in the proper performance of their official duties," and that the body-worn camera "shall remain activated until the event is completed in order to ensure the integrity of the recording unless the contact moves into an area restricted by this policy."

19.

If a Cass County deputy fails to activate the body-worn camera, fails to record the entire contact, or interrupts the recording, Cass County Sheriff's Office Standard Operating Procedure A-22 requires that deputy "shall document why a recording was not made, was interrupted, or was terminated."

20.

The same Standard Operating Procedure provides that Cass County Sheriff's Officer supervisors may turn off their body-worn camera during the decision-making process of an incident; but requires that "it must be documented in a report that the video stopped for this reason." Supervisors may also give deputies permission to terminate their recording if necessary; but, again,

"an explanation for the need to disruption in recording shall be documented by the respective officers in a written report."

21.

Similarly, Sarpy County Sheriff's Office Standard Operating Procedure P-3240, "Body-Worn Cameras," provides that

> The BWC should be activated whenever a deputy is responding to a call for service or at the initiation of any other law enforcement encounter with a member of the public.
>
> If a deputy fails to activate the BWC, fails to record the entire contact, or interrupts the recording, the deputy shall document in a written report why a recording was not made, was interrupted, or was terminated.

22.

Body-worn cameras are easy to activate.

23.

Nonetheless, not one Cass County deputy who had been interacting with SLAMA up to this point had activated their body-worn camera: not McAndrew and not Tuttle, and as Lee approached SLAMA, he did not activate his body-worn camera either.

24.

Although KRECKLOW wore the other ordinary components of his agency-issued uniform while on duty, and although he is required by agency policy to wear and use his department issued body-worn camera (BWC), he intentionally chose to not do so while working the Luke Bryan concert. Thus as he approached SLAMA at this moment, he had no body-worn camera to activate, although he had every other component of his agency-issued uniform and gear (such as his badge and his Taser).

**DEFENDANTS KRECKLOW AND LUDLOW'S PHYSICAL ABUSE AND PUNISHMENT**

25.

As KRECKLOW and Lee approached SLAMA, SLAMA was already in the presence of deputies McAndrew and Tuttle.

26.

SLAMA had already discarded his can of beer. Visibly, SLAMA had nothing in his hands and no signs of any weapons anywhere on his body. He looked much like the others who had drank some beer and enjoyed the concert, other than his F.B.I. cap.

27.

No concertgoer had complained about SLAMA or asked for help from officers. Hundreds, maybe thousands, of concertgoers were still present within the gated portion of the alfalfa field, many carrying cans of alcohol.

28.

Nonetheless, officers continued to engage SLAMA. KRECKLOW and Lee threatened to arrest SLAMA for trespassing if he did not leave. Aware that he had disturbed no one, SLAMA asked for the statute number for trespassing.

29.

At that point, KRECKLOW grabbed SLAMA, forced SLAMA to the ground, and stomped on SLAMA's right leg with enough force to directly and proximately cause multiple displaced and severely comminuted medial and lateral tibial plateau fractures.

30.

When KRECKLOW slammed SLAMA to the ground and stomped on his leg, SLAMA had presented no risk of flight and zero threat to KRECKLOW's safety.

31.

KRECKLOW then drew his Taser and held it against SLAMA's back, threatening to shock SLAMA with the electrical volts of his Taser, though he had already broken SLAMA's bones. Still, SLAMA presented zero risk of flight and zero threat to KRECKLOW's safety.

32.

LUDLOW approached the scene. He observed SLAMA on the ground, face-down, now handcuffed and in distress with KRECKLOW and Deputies McAndrew, Lee and Tuttle all standing and/or crouching over him.

33.

Though trained, experienced and commanded by Cass County Sheriff's Office Standard Operating Procedure A-22 to do so, LUDLOW chose not activate his body-worn camera.

34.

After observing that SLAMA was in distress and struggling to breathe, LUDLOW forcibly held SLAMA to the ground by gripping and applying pressure to the area of SLAMA's legs that KRECKLOW had literally just broken with his bootheel.

35.

Eventually, LUDLOW and McAndrew hoisted SLAMA to his feet and hauled him to a patrol cruiser. Because SLAMA could not walk on his freshly fractured right tibia, the officers had to hold him up. Nonetheless, LUDLOW grabbed SLAMA's left wrist and applied upward pressure while pulling SLAMA toward the patrol car, causing excruciating pain. LUDLOW did this even though SLAMA could not put weight on his broken leg and presented no threat to the officers.

36.

The choice of KRECKLOW to have not worn his body-worn camera to Cass County for this assignment, and his consequent failure to record a critical incident involving his use of sufficient force to fracture a citizen's tibia, violated the foregoing policies which he is commanded to follow.

37.

The choice of Sergeant LUDLOW to not record the use of force incident, or document the reason why he did not record it, violated the foregoing policies which he is commanded to follow.

## WHAT DEFENDANTS DID TO SLAMA

38.

Because SLAMA did not have health insurance, he declined medical evaluation that night. He hoped that the pain KRECKLOW inflicted amounted only to bruising that would resolve without requiring costly medical testing and treatment that he feared he could not afford.

39.

But SLAMA's pain did not resolve – it grew much worse. When he could not stand the pain anymore and sought medical evaluation, he learned that KRECKLOW had broken his bones. SLAMA underwent surgery to reduce the fracture and install fixation hardware.



His injuries are permanent.

FIRST CAUSE OF ACTION

42 U.S.C. § 1983 – KRECKLOW AND LUDLOW

40.

SLAMA had a right under the Constitution of the United States to be free from the use of excessive force by those acting under color of law, from being subjected to arrest in the absence of probable cause, and from the abuse of power by law enforcement agents. He was also entitled to

due process.

41.

By forcing SLAMA to the ground and breaking his leg, KRECKLOW used excessive force in arresting SLAMA. By doing so to punish SLAMA, KRECKLOW violated SLAMA's rights to due process.

42.

KRECKLOW and LUDLOW's actions violated SLAMA's clearly established rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

43.

At all times relevant, KRECKLOW and LUDLOW were acting under color of law and had assumed the professional responsibilities inherent in their roles as agents of the Cass County Sheriff and Sarpy County Sheriff.

44.

KRECKLOW and LUDLOW actively participated in the deprivation of SLAMA's aforementioned constitutional rights and with deliberate indifference to SLAMA's rights.

45.

KRECKLOW and LUDLOW caused SLAMA to suffer physical injuries, including broken bones in his left leg, a bruised or sprained wrist, pain and suffering; emotional distress and anxiety; economic loss; the loss of his dignity; the violation of his bodily integrity; and the deprivation of his constitutional rights.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – KRECKLOW and LUDLOW

46.

SLAMA engaged in constitutionally protected speech when he wore his "F.B.I." cap and when he asked the officers for the legal authority for their commands.

47.

SLAMA's protected speech was a substantial motivating factor in the conduct of KRECKLOW and LUDLOW, including their use of excessive force, and the unlawful punishment imposed upon SLAMA in the absence of probable cause.

48.

The conduct of KRECKLOW and LUDLOW described above herein would chill a person of ordinary firmness from continuing to participate in the protected expression demonstrated by SLAMA.

49.

The conduct of KRECKLOW and LUDLOW caused SLAMA to suffer physical injuries, including broken bones in his left leg and a bruised or sprained wrist; pain and suffering; emotional distress and anxiety; economic loss; the loss of his dignity; the violation of his bodily integrity; and the deprivation of his constitutional rights.

### THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – COUNTY OF CASS

50.

The County of Cass has the responsibility and duty to protect and serve the public by properly hiring, training and controlling officers under their command, including KRECKLOW while he was working under the Interlocal Agreement, as well as its own officers. Its duty includes promulgation and enforcement of rules, regulation and training regarding the use of excessive force.

51.

County of Cass's duty includes a duty to train its professional law enforcement staff in the proper, improper and abusive use of force. It includes a duty to train its professional law enforcement staff to de-escalate tensions rather than attack and assault. It includes a duty to train its professional law enforcement staff in the appropriate response when other officers commit acts of excessive force in their presence. It also includes a duty to enforce policies regarding excessive force with appropriate investigative procedures and consequences for violation of those policies rather than ratifying violations.

52.

County of Cass failed to promulgate adequate training, rules and regulations relating to excessive force, and further failed to instruct and train LUDLOW – a supervisor -- in the appropriate methods for avoiding inappropriate and abusive use of excessive force and the appropriate response when they witnessed cooperating officers committing acts of excessive force in their presence.

53.

County of Cass established through tacit authorization or explicit instruction a policy or custom of allowing officers to commit uses of excessive force by its own officers and cooperating officers against citizens occurring within Cass County. That policy has been enacted and enforced with deliberate indifference in the constitutional rights of persons effected thereby, including SLAMA.

54.

County of Cass failed to properly train and control officers under its command, including

LUDLOW, and failed to ensure compliance with its training and regulations regarding the use of force; that failure has resulted in a policy or custom of inadequate training on the subject of excessive force.

55.

County of Cass' custom of failing to properly train and control officers under its command, including these Defendants, amounts to deliberate indifference to the rights of persons with whom Cass County officers (and officers working under Cass County's Interlocal Agreements such as KRECKLOW) come into contact, including SLAMA.

56.

Cass County's custom and policy of allowing abuse of force and arrest powers, and its failure to properly train and control officers under its command, including KRECKLOW when he was working under Cass County's Interlocal Agreement, was so reckless that misconduct involving excessive force was inevitable as of September 22, 2022.

FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 RATIFICATION – COUNTY OF CASS

57.

In the time since September 22, 2022, County of Cass has ratified the conduct of LUDLOW, KRECKLOW and the other deputies involved in this event by failing to conduct an appropriate investigation and by failing to enforce, remediate and impose consequences for violations of its policies and procedures on use of force.

58.

To the contrary, County of Cass supported wrongfully prosecuting SLAMA for false allegations that SLAMA had resisted arrest and obstructed a peace officer. This was done to

distract and misdirect the appropriate review and investigation of its deputies' and cooperating officers' (KRECKLOW's) conduct in breaking SLAMA's bones.

59.

Before September 22, 2022, County of Cass had failed to make meaningful investigation into previous incidents of deputies violating its use-of-force policies and procedures, as a custom or informal policy of ratification of, and deliberate indifference to, the violation of Constitutional rights of persons like SLAMA to not be physically attacked and abused by Cass County law enforcement and cooperating officers working with Cass County under the authority of Cass County's Interlocal Agreements.

60.

County of Cass violated and ignored Standard Operating Procedure A-22, "Body-Worn Camera," by failing and refusing to hold accountable deputies McAndrew, Lee, Tuttle and LUDLOW for their violations of that policy. County of Cass violated and ignored the spirit of Standard Operating Procedure A-22 by allowing KRECKLOW to report for duty in Cass County under the Interlocal Agreement when KRECKLOW was not wearing a body-worn camera. County of Cass initiated no communication encouraging corrective action toward KRECKLOW by the Sarpy County Sheriff These knowing and intentional failures by County of Cass amount to ratification of deliberate indifference toward the rights of individuals such as SLAMA.

**PUNITIVE DAMAGES**

61.

In addition to compensatory damages, SLAMA claims punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of SLAMA's civil rights, as alleged herein. The acts and

omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including SLAMA. Defendants committed the acts and omissions alleged herein and subjected SLAMA to abusive treatment. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

62.

The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others and is thus appropriate in this case. This instance of reckless and callous indifference to SLAMA's safety and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## ATTORNEY'S FEES

63.

As a result of Defendants' actions as alleged herein, SLAMA was required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act. This includes attorney's fees incurred in defending wrongful criminal charges as well as incurred in collection actions for medical expenses precipitated by KRECKLOW breaking SLAMA's bones.

## TOTAL DAMAGES

64.

The acts and omissions of Defendants as set forth above have resulted in damages to SLAMA, in these particulars:

A. Compensatory damages, in an amount to be proven at trial, for SLAMA's physical

and mental pain and suffering, inconvenience and medical expense not covered by insurance of not less than $117,910.78;

B. Compensatory damages for the violation of SLAMA's rights under the federal and state Constitutions;

C. Punitive damages to punish and deter the reprehensible conduct alleged in this Complaint;

D. Attorneys' fees and expenses available under 42 U.S.C. § 1988; and

E. The costs of this action and such other and further relief as this Court deems equitable and proper.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A. Plaintiff prays for damages in an amount which will fairly and justly compensate for his injuries and the violation of his civil rights, and other consequential damages flowing from the violations and torts set forth herein;

B. Punitive damages in an amount sufficient to adequately punish Defendants and to deter future conduct of the type alleged in this Complaint;

C. For attorneys' fees pursuant to 42 U.S.C. § 1988; and

D. For the costs of this action and for such other and further relief as this Court deems equitable and proper.

### JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

SLAMA requests that this matter be tried to a jury in Lincoln, Nebraska.

JASON T. SLAMA, Defendant,

By: /s/ *Maren Lynn Chaloupka*
Maren Lynn Chaloupka – NSBA #20864
Chaloupka Law LLC
1906 Broadway
Post Office Box 1724
Scottsbluff, NE 69363-1724
(308) 270-5091
mlc@chaloupkalaw.net

-AND-

Adam J. Sipple – NSBA #20557
Sipple Law
12020 Shamrock Plaza, Suite 200
Omaha, NE 68154
(402) 778-5055
adam@sipple.law